331 A.2d 181

**COMMONWEALTH of Pennsylvania**

**v.**

**John Paul BEDERKA Appellant.**

Supreme Court of Pennsylvania.

Argued Oct. 4, 1974.

Decided Jan. 27, 1975.

654

**656**

Gerald R. Solomon, Simon B. John, Uniontown, for appellant.

Conrad B. Capuzzi, Dist. Atty., Lawrence D. McDaniel, Wm. M. Radcliffe, Uniontown, for appellee.

Before EAGEN, O'Brien, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION

O'BRIEN, Justice.

Appellant, John Paul Bederka, was tried by a judge and jury and found guilty of murder in the first degree. Post-trial motions were denied and appellant was sentenced to life imprisonment. This appeal followed.

On October 24, 1971, Dr. David F. Sennett, a physician in Uniontown, Pennsylvania, was found dead in the front seat of his automobile, which was parked in front of the residence of Caroline Bederka, the estranged wife of appellant. Death was caused by two shotgun blasts, fired at point-blank range. Appellant was subsequently arrested and found guilty of the homicide.

■ In this appeal, appellant first argues that the evidence was insufficient to prove his guilt beyond a reasonable doubt. We do not agree. The test to be applied in determining the sufficiency of the evidence was stated

in *Commonwealth v. Pitts*, 450 Pa. 359, 301 A.2d 646 (1973), wherein we held:

"the test to be applied in determining the sufficiency of the evidence is whether accepting as true all of the evidence, be it direct or circumstantial or both, and all reasonable inferences arising therefrom, upon which, if believed, the jury could properly have based its verdict, it is sufficient in law to prove beyond a reasonable doubt that the accused is guilty of the crime of which he has been convicted." At page 361, 301 A.2d at page 647.

■ Viewing the evidence in this light, the following facts were established by the Commonwealth: Appellant and his wife had been separated prior to the shooting of Dr. Sennett, the victim. Appellant's wife had been seeing the victim socially prior to the shooting. Four days prior to the shooting, appellant had told his neighbor that he had heard about the victim and his wife and that he (appellant) was going to "get them" and that the neighbor would be reading about it in the newspapers. Appellant's daughter-in-law stated that appellant had told her that he was going to kill his wife and then himself. A neighbor of the appellant stated that shortly after the established time of the murder, he saw appellant pull into his driveway and alight from his car, carrying a shotgun. A witness who did not see the actual shooting stated that prior to the shooting he saw a dull black Volkswagen parked in front of Mrs. Bederka's apartment. Appellant's son testified that appellant owned a dull-finished black Volkswagen. After the shooting, police investigating the possible involvement of appellant discovered a 12-gauge shotgun at his home and found four 12-gauge No. 2 shotgun shells in the rear of appellant's yard. An FBI firearms expert stated that Dr. Sennett was killed with a 12-gauge shotgun loaded with No. 2 shotgun shells, but that he could not state whether appellant's shotgun had been used in the murder of the

victim. Appellant's son further testified that while talking to his father in jail, his father told him not to tell the police that he had seen No. 2 shotgun shells at his home prior to the murder. Based upon this evidence, we are of the opinion that the circumstantial evidence presented in this case was sufficient to prove appellant's guilt beyond a reasonable doubt.

Appellant next argues that the court erred in allowing Commonwealth witnesses to testify who were not listed in the Commonwealth's original answer to the bill of particulars filed by appellant, but whose names were given to appellant three days before trial. We do not agree. In *Commonwealth v. Senk*, 412 Pa. 184, 194 A.2d 221 (1963), we dealt with an issue similar to that raised by appellant herein and stated:

> "defendant's counsel sought to ascertain the names and addresses of Commonwealth witnesses. While termed a bill of particulars, this pleading in truth was a petition for discovery. There is no basis in Pennsylvania law for such a request except where exceptional circumstances and compelling reasons exist". At page 193, 194 A.2d at page 226.

In light of *Senk*, appellant can hardly complain about the lateness in receiving the witnesses names when he was not entitled to them. Moreover, if appellant was truly prejudiced by the lateness of the names, he should have moved for a continuance, which he failed to do.

Appellant next argues that the testimony of Detective Larry Blair concerning a statement appellant gave shortly after the murder should have been excluded because the statement was not listed in an answer to a bill of particulars. This is not supported by the record. The statement was listed in an answer filed on November 10, 1971.

■ Appellant next argues that the admission into evidence of the shotgun and shotgun shells found at appellant's home was error, since the Commonwealth could not prove that the shotgun or shells were used in the murder of the victim. We do not agree. The possession by appellant of weapons similar to the ones used in the actual murder was certainly relevant to establish that appellant possessed the necessary means to commit the murder. See *Commonwealth v. Yount,* 455 Pa. 303, 314 A.2d 242 (1974).

■ Appellant next argues that the trial court erred in allowing a Commonwealth witness to testify to a threat, made by appellant, against Dr. Sennett, the victim, and appellant's wife. The Commonwealth witness testified that prior to the murder, appellant stated, "he was going to get them, that she could not do that to him." This response was given when appellant and the witness were discussing the fact that appellant's wife and Dr. Sennett were seeing each other socially. This testimony was relevant to show the state of mind of appellant and his motive for murder. See *Commonwealth v. Glover,* 446 Pa. 492, 286 A.2d 349 (1972). In the same regard, appellant also contends that it was error to allow his daughter-in-law to testify that he had stated that he was going to kill his wife and then himself. This statement was also admissible to show appellant's state of mind concerning the affair between his wife and the victim, thus establishing state of mind toward certain persons with respect to a particular subject. See *Glover, supra.*

■ Appellant finally argues that the trial prejudiced appellant in his charge because the judge failed to mention the Commonwealth witnesses' testimony given on cross-examination. An examination of the charge as a whole reveals that the trial judge fully protected appellant's rights in his charge when he told the jurors that it

was their recollection of the testimony that was to form the basis of their decision and not his.

Judgment of sentence affirmed.

JONES, C. J., did not participate in the consideration or decision of this case.

ROBERTS, NIX and MANDERINO, JJ., concur in result.