402 A.2d 679

**COMMONWEALTH of Pennsylvania**

**v.**

**Ronald J. NOYER, Appellant.**

Superior Court of Pennsylvania.

Submitted Nov. 18, 1977.

Decided April 25, 1979.

Petition for Allowance of Appeal Granted Sept. 25, 1979.

546

James V. McGough, Altoona, for appellant.

Thomas G. Peoples, Jr., District Attorney, Hollidaysburg, for Commonwealth, appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

PRICE, Judge:

This appeal arises from imposition of sentence following denial in the court below of appellant's motions for a new trial and in arrest of judgment. Appellant raises seven

issues on appeal. For the reasons stated herein, we reverse the judgment of sentence and remand the case for a new trial.

The facts essential for resolution of this appeal are the following. On February 23, 1975, appellant, Robert Sweitzer, and a third party were being transferred from the Blair County Courthouse, where they were all incarcerated at the time, to the State Correctional Institution in Huntingdon, a distance of about twenty-five miles. Robert Ferguson and J. Reed Gormont, two deputies both sixty-nine years of age at the time of this incident, were assigned to transport the trio by vehicle. The prisoners were handcuffed to one another by two sets of handcuffs, and they occupied the rear seat of the sheriff's automobile.

Approximately ten miles east of Hollidaysburg, while the car was proceeding on Route 22, an affray ensued in which the prisoners managed to overcome the deputies. The trio seized the deputies' weapons, and a shot was fired at Mr. Gormont as the prisoners made good their escape. Both deputies were hospitalized and remained incapacitated for long periods thereafter.

As the result of a jury trial, in which appellant and his co-defendant Robert Sweitzer were tried together, appellant was convicted of three counts of robbery,[1] and one count each of aggravated assault,[2] recklessly endangering another person,[3] escape,[4] assault by a prisoner,[5] and theft by unlawful taking or disposition.[6]

Appellant's first contention is that the trial court erred in failing to discharge him due to a violation of Pa.R.Crim.P. 140(f)(1) and Pa.R.Crim.P. 142, requiring that the issuing

1. 18 Pa.C.S. § 3701.

2. 18 Pa.C.S. § 2702.

3. 18 Pa.C.S. § 2705.

4. 18 Pa.C.S. § 5121.

5. 18 Pa.C.S. § 2703.

6. 18 Pa.C.S. § 3921.

authority at a preliminary arraignment fix a day and hour for the preliminary hearing which is not less than three nor more than ten days thereafter, to be extended only for cause.

The criminal complaint in this case was lodged against appellant on February 28, 1975, but appellant was not arraigned until March 10, 1975, because he remained at large until that time. Appellant received written notice that his preliminary hearing was scheduled for March 17, 1975, but was told by the issuing magistrate that the hearing might have to be postponed beyond that date due to the condition of the deputies. Not until June 10, 1975, was a preliminary hearing held, and at that time a prima facie case was found against appellant.

The Commonwealth filed a petition for an extension of time in which to bring appellant and John Sweitzer to trial under Pa.R.Crim.P. 1100(c), on August 22, 1975. On September 22, 1975, a hearing on that motion was held, combined with John Sweitzer's motion to quash and his challenge to the array of the grand jury, and appellant's challenge to the array of the grand jury. The Commonwealth was granted extensions, the defendants were denied the relief requested, and on October 1, 1975, the grand jury returned an approved bill of indictment. Appellant subsequently filed motions for venue change, suppression of evidence, bill of particulars, discovery and inspection, and a motion to quash the indictment.

It is appellant's basic contention that the magistrate had no cause to extend the preliminary hearing date. However, our review of the record of the hearing of September 22, 1975, and the lower court's findings of fact thereon persuade us that the magistrate satisfactorily complied with Pa.R.Crim.P. 140 and 142. The court found that on the date of arraignment, written notice was provided appellant that his preliminary hearing would be held on March 17, 1975, but that by virtue of the inability of the Commonwealth's witnesses to testify at that time, an extension was almost certain. Deputy Ferguson's doctor testified that as of April

30, 1975,, the deputy was still not able to testify. Deputy Sheriff Gormont's doctor stated that not until June 19, 1975, (after the hearing) would he have approved Gormont's appearing to testify. The judge found that the magistrate received word from the individuals on or about May 21, 1975, that they could appear, but he did not schedule the hearing immediately because the complaining officer, Trooper Behe, was on vacation and would thereafter be in court. June 10, 1975, was set as the earliest feasible date for the preliminary hearing. Appellant received notice of the June 10th proceeding.

Several cases of this court shed light on the proper reading to be given to Pa.R.Crim.P. 140(f)(1). In *Commonwealth v. DeCosey*, 246 Pa.Super. 412, 371 A.2d 905 (1977), wherein former President Judge Jacobs elucidated the purpose of the rule, we held that failure to comply with the rule does not automatically entitle one to discharge. We noted in that case that there is no constitutional right to a preliminary hearing, that its purpose is merely to determine whether a prima facie case exists against a defendant, and that it is not to substitute as a guilt-determining procedure. Judge Jacobs therein noted that

"One of the obvious prejudices to an accused resulting from a delay in the scheduling of a preliminary hearing is his incarceration. In fact, the hearing's principal function is to protect an accused's right against an unlawful detention. *Commonwealth v. Mullen*, 460 Pa. 336, 333 A.2d 755 (1975). Here, however, the defendant was released on bond, and only when the preliminary hearing was finally held did he object to its untimeliness." *Id.*, 246 Pa.Super. at 416, 371 A.2d at 907.

The court further noted that other than the four-day delay itself, no prejudice had been shown to have resulted to DeCosey. "His defense was in no way impaired." *Id.*

Another case decided by this court just shortly after *DeCosey* was *Commonwealth v. Wansley*, 248 Pa.Super. 234, 375 A.2d 73 (1977), in which Judge Jacobs again wrote for a majority of this court. In that case, at the time of arraign-

ment a date in compliance with Pa.R.Crim.P. 140(f)(1) was set for the preliminary hearing. Bail was set but not posted. On the scheduled date, the appellant appeared and requested a continuance to secure counsel's presence. On the next scheduled date, the Commonwealth sought a continuance because witnesses were not available. The district justice continued the preliminary hearing a second time due to the Commonwealth's inability to produce an injured witness, but set no certain date for the hearing. Bail was reduced, but the appellant remained incarcerated. The appellant's petition for discharge was denied by the lower court, but we reversed and discharged the appellant. We noted in *Wansley*, that while in some cases a preliminary hearing cannot possibly be conducted when originally scheduled in compliance with Pa.R.Crim.P. 140(f)(1), "the necessity for preventing prolonged custody pending a determination of probable cause remains, despite the existence of valid reasons for a continuance." *Commonwealth v. Wansley, supra* at 238, 375 A.2d at 75. We found that the fact that appellant was incarcerated between the time of arraignment and the ultimate preliminary hearing, and but for the continuations would not have been, constituted the type of prejudice frowned upon in *DeCosey*. In the instant case, the judge below found as fact, unchallenged by appellant, that he was incarcerated during the time between his arraignment and the preliminary hearing on unrelated charges, and thus we find no prejudice inured to him.[7]

**7.** In *Commonwealth v. Wansley, supra*, the majority noted by footnote that Rule 142, providing for the notation of continuances and reasons therefor on the magistrate's docket, did not suspend the Act of June 15, 1937, P.L. 1743, No. 368, § 14, 42 P.S. § 1114. The court stated that although the appellant argued to the contrary, there is no requirement that testimony be taken to justify granting a continuance. We finally made note that the court below did not make appropriate docket entries in *Wansley*. The result in *Wansley* was due to prejudice inuring to the appellant, however, and not to the inadequacy of the magistrate's records. In the instant case, the magistrate's records were sparse. However, as reconstructed at the September 22, 1975 hearing and supplemented by the testimony of the doctors of the two victim-deputies, the record on appeal adequately establishes that the preliminary hearing in this case was held

Appellant's second assertion is that Pa.R.Crim.P. 1100(a)(2),[8] requiring that trial commence within 180 days of the filing of a written complaint, was violated, and that he is therefore entitled to discharge. *See* Pa.R.Crim.P. 1100(f). We disagree.

The written complaint in this case was filed on February 28, 1975, the same date of the occurrences herein involved. The Commonwealth was therefore required to bring appellant to trial on or before August 27, 1975, absent any automatic exclusions of time under Pa.R.Crim.P. 1100(d) or any Commonwealth extensions in accordance with Pa.R. Crim.P. 1100(c). *Commonwealth v. Shelton*, 469 Pa. 8, 364 A.2d 694 (1976). In the instant case, the lower court found that the time between the filing of the complaint and March 8, 1975, the day on which appellant was located by authorities in Pittsburgh and presented before a local magistrate in accordance with Pa.R.Crim.P. 123(a), was excludable under Rule 1100(d) because of appellant's unavailability. Thus, the Commonwealth had until September 4, 1975, to bring appellant to trial.

On August 22, 1975, well within the 180 days and thus timely under Rule 1100(c), the prosecution filed a document entitled, "Petition for Continuance Pursuant to Rule 1100 of the Pennsylvania Rules of Criminal Procedure."[9] The court scheduled a hearing on the petition for September 3, 1975, at which appellant and his counsel were present. The assistant district attorney explained on the record the delay between appellant's arraignment and preliminary hearing. He stated

as soon as possible under the circumstances and that appellant can successfully claim no prejudice from the delay.

**8.** Pa.R.Crim.P. 1100(a)(2) provides: "Trial in a court case in which a written complaint is filed against the defendant after June 30, 1974 shall commence no later than one hundred eighty (180) days from the date on which the complaint is filed."

**9.** It is clear from its contents that the document was for an *extension* of time rather than a *continuance,* and we will therefore overlook the error in the caption, since the defendant and court obviously received effective notice. *But see, Commonwealth v. Kincade*, 246 Pa.Super. 389, 371 A.2d 894 (1977).

that although it was contemplated that the matter would be presented to the grand jury in August, that session was not conducted. The next earliest time that the grand jury would be in session and at which indictments could be sought was to commence on September 29th. The Commonwealth contended that based upon these facts, the court should make a finding of due diligence and extend the run date of Rule 1100.

Appellant's trial counsel objected, contending that he had no knowledge of the physical condition of the victims nor of the times or circumstances surrounding the physicians' approval of their attendance at a preliminary hearing. Counsel insisted that the Commonwealth could not merely make the factual assertions, but was required to substantiate them. The court agreed that the Commonwealth bore the burden, and, over appellant's objection, granted the Commonwealth's request to continue the hearing so that the victims and their physicians could be produced to testify. The court set the subsequent hearing date as September 19th, noting that the continuance would not delay the grand jury presentment or trial. Because one of the physicians was unable to appear on the 19th, the hearing was finally conducted on September 22, 1975. The court made a finding of due diligence and extended the run date to January 9, 1976.[10]

Appellant's argument on appeal is that the Commonwealth did not exercise due diligence in proceeding with appellant's preliminary hearing, and that therefore the Rule 1100 extension was improperly granted. To the contrary, we concur with the findings of the court below that the Commonwealth was entitled to the extension.

The record of September 22, 1975, adequately justifies the court's conclusion that June 10, 1975, was the earliest date

10. Although trial did not commence until January 22, 1976, beyond the extended period, we need not consider any passage of time after the extension elapsed, since the Commonwealth made no further petition to which appellant objected, nor did appellant file a written motion to dismiss, thereby waiving any objection.

on which the victims and complaining officer could have been present for the preliminary hearing; and the hearing was in fact conducted that day. The grand jury for the June term of court commenced on June 2, 1975, and the district attorney would not be able to present the case then. The next grand jury would commence on September 29th. It was therefore necessary for the Commonwealth to secure an extension, and we hold that the court below properly granted it upon a record that establishes the Commonwealth's due diligence.

Appellant's third contention is that the court erred in permitting the testimony of six Commonwealth witnesses whose names were not endorsed on the bill of indictment. At a hearing on all pre-trial applications held on December 19, 1975, the court had before it, *inter alia*, appellant's request via an application for a bill of particulars for "[t]he names and addresses of any witnesses to the alleged crimes." At the commencement of the hearing, Mr. Woodcock, counsel for appellant's co-defendant, stated:

"[W]e have the names endorsed on the indictment. We would like the addresses of the witnesses that are endorsed on the indictment." (December 19, 1975 Hearing at 2).

No further argument was had on discovery of this particular information. Accordingly, the court ruled:

"[I]nsofar as the names of the witnesses endorsed upon the Bill of Indictment are concerned, the application for the addresses of these witnesses is denied by virtue of the fact that the same presently appear upon the transcript filed in these matters and are readily available to the defendants from said transcripts." (December 19, 1975 Hearing at 7).

■ First, under former Pa.R.Crim.P. 310, appellant had no automatic right to discover the names of witnesses that the Commonwealth intended to call. *Commonwealth v. Bederka*, 459 Pa. 653, 331 A.2d 181 (1975); *Commonwealth v. Jones*, 245 Pa.Super. 487, 369 A.2d 733 (1977). The Commonwealth so responded in its answer to the request for a bill of

554

particulars. Second, it was the co-defendant's attorney who then narrowed the scope of the request at the December 19th hearing, asking only for addresses of the witnesses named in the indictment. It was this narrowed request which the judge responded to by order. Appellant's counsel offered no protest, nor did he offer any proof of "exceptional circumstances or compelling reasons" to entitle him to discovery under former Pa.R.Crim.P. 310.

We note, finally, that there is no requirement that the indictment have the names of all potential Commonwealth witnesses endorsed thereon. *Commonwealth v. Gockley*, 411 Pa. 437, 192 A.2d 693 (1963); *Commonwealth v. Emmel*, 194 Pa.Super. 441, 168 A.2d 609 (1961). Accordingly, we find no error.

Appellant's next assertion, in which we find merit,[11] is that the court below erred in charging the jury that it should receive the testimony of appellant with caution as it came from a corrupt source, namely, his co-defendant's accomplice.

Robert Sweitzer, appellant's co-defendant, did not testify at trial, and appellant was the sole witness for the defense. In his charge to the jury, the court below stated:

"Now, there is no rule of law which forbids the jury convicting upon the uncorroborated testimony of an ac-

---

**11.** Appellant raises one more issue, which, if meritorious, would entitle him to greater relief than we grant. He asserts that because the words "true bill" appeared on the face of his indictments, the indictments should have been quashed for failure to comply with Pa.R.Crim.P. 210(a), which provides:

"After a grand jury has considered the bill of indictment, the foreman shall endorse thereon their action, either 'approved' or 'dismissed,' and he shall sign it and record thereon the date of the grand jury's action."

The comment to the rule provides: "Heretofore, the words 'true bill' or 'ignored' were endorsed on the bill of indictment. The term 'not approved' makes more sense to the layman than the word 'ignored.' Another reason for discarding the terminology 'true bill' is that it has the connotation that the accusation against the defendant is true."

Appellant argues that he was prejudiced because of the notation. However, to expect relief upon such a hypertechnicality, when there is no possibility of prejudice since the trial jury was not exposed to the indictments, is a frivolous argument at best.

complice. *While the law permits such a conviction, it looks with disfavor upon this character of proof, and, because its source is corrupt, the jury should ordinarily not rely on it unless corroboration is present.* You should scrutinize the testimony of Mr. Noyer closely and determine whether corroboration exists. Testimony to be classed as corroboration need not relate solely to the main fact involved, but may be considered as corroboration when the testimony relates to relevant and material facts which have a direct relation to the main fact involved. Corroborative testimony does not have to extend to the whole of the witness's testimony. If it is shown that he has testified truly in some important particulars, the jury may infer that he has done so in others. In other words, when we speak of corroboration, we refer to evidence which is supplementary to that given by the witness, and which tends to strengthen and confirm it.

However, even if your search for corroboration is fruitless, you, the jury, may believe an accomplice's testimony if it has the ring of truth. As you were told before, there is no rule of law which commands you to disbelieve the uncorroborated testimony of an accomplice, and the determination whether corroboration is necessary, or the sufficiency of such corroboration as may be present, is solely for you. *The only requirement of the law is that you must, before you accept it, scrutinize it carefully and critically.*" (N.T. 332–33) (emphasis added).

Defense counsel objected to the charge. Co-defendant's counsel articulated his objection by noting that appellant was testifying for the defense, not for the Commonwealth, and that the "corrupt source" charge is appropriate only when an accomplice testifies for the prosecution.

We find *Commonwealth v. Russell*, 477 Pa. 147, 383 A.2d 866 (1978), a case of first impression in this Commonwealth, dispositive of this issue. In *Russell*, the Commonwealth produced testimony from one individual who claimed that he was present when Russell organized the crime, and that he was to act as a lookout, but withdrew from the enterprise.

Another of the perpetrators testified for the defense, declaring that he did not know the appellant and that the appellant was not involved in the criminal incident. The appellant also testified in his own behalf. The court gave the "accomplice charge" as to both the Commonwealth and the defense witnesses. Our supreme court held that

"A legitimate basis exists for charging the jury to view an accomplice's testimony with suspicion when the accomplice testifies for the Commonwealth. Such a witness, out of a reasonable expectation of leniency, has an interest in inculpating others. This basis is inapplicable, however, when the accomplice testifies on behalf of the defense. One implicated in a crime cannot reasonably expect such leniency by exonerating others, particularly where, as here, the witness has already been sentenced for committing the crime." *Id.*, 477 Pa. at 153, 383 A.2d at 868–69.

In the instant case, appellant took the stand only in his own defense. His testimony was certainly not designed to aid the Commonwealth in prosecuting his co-defendant. Nor was its function the exoneration of his co-defendant. Rather, his testimony was addressed merely to his own defense.

The accomplice charge, long recognized as appropriate when the accomplice testifies for the prosecution and might thereby be prompted by his hope of leniency, *Commonwealth v. Cristina*, 481 Pa. 44, 391 A.2d 1307 (1978); *Commonwealth v. Thomas*, 479 Pa. 34, 387 A.2d 820 (1978); *Commonwealth v. Farquharson*, 467 Pa. 50, 354 A.2d 545 (1976); *Commonwealth v. Vorhauer*, 232 Pa.Super. 84, 331 A.2d 815 (1974), was totally inappropriate in this case. Had appellant by his testimony attempted to exculpate himself and inculpate his co-defendant, this would be a different case. But no such effort was made here. Furthermore, it would be the co-defendant's right, in that situation, to request the cautionary charge. In the instant case, both appellant's counsel and counsel for the co-defendant objected to the charge, and we find that the court erred in giving

it. We will therefore vacate the judgment of sentence and remand the case for a new trial.[12]

Judgment of sentence is vacated, and the case is remanded for a new trial in accordance with this opinion.

SPAETH, J., files a dissenting opinion.

JACOBS and WATKINS, former President Judges, and HOFFMAN, J., did not participate in the consideration or decision of this case.

SPAETH, Judge, dissenting:

The majority states that the preliminary hearing was held as soon as possible after appellant's arraignment. Maj. opinion at 682 n. 7. This statement is unsupported by the record. Appellant was arraigned on March 10, 1975. His preliminary hearing was not held until June 10. This delay cannot be justified on the ground that the victimized deputies were unavailable to testify because of their injuries until May 21. Under the majority holding in *Commonwealth v. Rick*, 244 Pa.Super. 33, 366 A.2d 302 (1976), the presence of the deputies was not needed to bind appellant for court, since another police officer could have appeared and summarized their accounts of the incidents. Moreover, even if some delay in conducting the preliminary hearing was warranted so that the victims could testify, a substantial part of the delay still remains unjustified. The record shows that Deputy Ferguson was available to testify by April 30, and that Deputy Gormont was available by May 21. No justification was given for delaying the hearing after Deputy Ferguson became available; as for the delay following May 21, the lower court stated that a preliminary hearing could not be held because the complaining officer, Trooper Behe, was on vacation. Yet, the need for this

12. We find no merit to appellant's remaining contentions. Indeed, they are the same questions raised by his co-defendant, Robert John Sweitzer, whose judgment of sentence was affirmed per curiam on February 15, 1978, at 253 Pa.Super. 608, 384 A.2d 992 (1978). The error we here find was harmless and not prejudicial to the co-defendant.

person, who does not seem to have been a material witness, at the hearing is unclear.

Under these circumstances, I do not believe that the preliminary hearing was held as soon as possible. Where there has not been substantial compliance with Rule 140(f), a defendant need not show prejudice for the indictment to be quashed. *Commonwealth v. Riley*, 260 Pa.Super. 280, 393 A.2d 1263 (1978) (SPAETH, J., dissenting); *Commonwealth v. Wansley*, 248 Pa.Super. 234, 239, 375 A.2d 73, 76 (1977) (SPAETH, J., concurring); *Commonwealth v. DeCosey*, 246 Pa.Super. 412, 418, 371 A.2d 905, 907 (1977) (SPAETH, J., concurring). Here, there was not substantial compliance, and the indictments should have been quashed.